**John AUSTER**

v.

**CITY OF NEW ORLEANS**

**NO. 2016–CA–0380**

Court of Appeal of Louisiana, Fourth Circuit.

**NOVEMBER 18, 2016**

Laurie W. Maschek, THE LAW OFFICE OF LAURIE W. MASCHEK, LLC, 1350 Gause Boulevard West, Slidell, LA 70460, COUNSEL FOR PLAINTIFF/APPELLANT

Elizabeth S. Robins, DEPUTY CITY ATTORNEY, Kimlin Lee, DEPUTY CITY ATTORNEY, Cherrell S. Taplin, SENIOR CHIEF DEPUTY CITY ATTORNEY, Rebecca H. Dietz, CITY ATTORNEY, City of New Orleans, 1300 Perdido Street, Suite 5E03, New Orleans, LA 70112, COUNSEL FOR DEFENDANT/APPELLEE

(Court composed of Chief Judge James F. McKay, III, Judge Daniel L. Dysart, Judge Rosemary Ledet)

Judge Daniel L. Dysart

John Auster, a former New Orleans Police Department officer, appeals a judgment denying a Motion to Enforce portions of a 1989 consent judgment that set forth conditions for accrual of sick and annual leave after he was declared disabled 1987. For the reasons that follow, we affirm the ruling of the trial court.

## BACKGROUND:

John Auster ("Auster") voluntarily entered DePaul Hospital on April 29, 1987, with complaints of depression brought about by an investigation into payroll fraud being conducted by the New Orleans Police Department ("NOPD") and the Orleans Parish District Attorney's Office. He was subsequently found to be disabled.

On May 16, 1988, Auster filed a Petition for Worker's Compensation, naming the City of New Orleans ("City"), Department of Police (NOPD) as a defendant. On January 30, 1989, the parties entered into a Consent Judgment, which is the subject of this litigation.

In addition to stating that Auster would receive weekly indemnity benefits from the date of the judgment until further orders of the court, the judgment provided:

2) The City of New Orleans will return to John Auster all sick and annual leave days used by John Auster from April 29, 1987 through the date of this judgment. 3) John Auster will continue to accrue sick and annual leave days and will accrue credit for time in service to the City of New Orleans as pertaining to his pension rights as provided by law. This accrual of days shall occur concurrent with receipt of worker's compensation indemnity benefits by John Auster.

The record reveals that Auster was fired by the NOPD in July of 1995 for violation of departmental rules and/or procedures, specifically violations of Adherence to Law, Truthfulness, Unauthorized Force, Instructions From Authoritative Source and Acting Impartially. After a civil service hearing, it was recommended that Auster be dismissed from the NOPD, effective July 7, 1995.[1]

Shortly after his discharge, Auster applied for disability retirement. The application for disability retirement included the following statement, which was acknowledged by Auster's signature:

I understand that should other earnings when added to the disability benefits equal an amount which exceeds the average final compensation, my disability will be reduced in order that my income will not exceed the average final compensation.

In December 1995, Auster was notified that his disability application was approved with a retirement date of October 12, 1995. The notification from the Municipal Police Employees' Retirement System ("MPERS") explained, as per the above-quoted statement, that he was entitled to a disability benefit of $1,305.58 per month, but as he was receiving workers' compensation benefits of $1,131.00 per month, the total amount exceeded his average final compensation by $260.62 per month. Thus, he would be entitled to a reduced disability retirement benefit of $1,044.96. Further, should Auster's workers' compensation benefits be reduced, then his disability pension would be increased until he reached his maximum benefit of $2,175.96 per month.

At the hearing on the Motion to Enforce, Auster conceded that he had been compensated in March of 1989 for the accrued sick and annual leave days from April 28, 1987 through January 30, 1989,

---

1. Auster was involved in an altercation with six juveniles and Auster's sons. Auster confronted the six juveniles with a shotgun, fired into the windshield of the vehicle in which the six juveniles were retreating, and severely injured two of them. The incident occurred in Jefferson Parish, and after an investigation by the Jefferson Parish Sheriff's office, Auster was charged with six counts of attempted murder. The record does not reveal the outcome of those charges.

the date of the Consent Judgment. Thus, the only issue before this Court is whether Auster continued to accrue sick and annual leave after he was discharged from service by the NOPD on July 7, 1995.

**DISCUSSION:**

The only issue raised by Auster is whether a properly filed and revived consent judgment is enforceable against the City. Auster categorizes his claim as a workers' compensation matter. He argues that as he continues to receive workers' compensation disability payments, he is still an employee of the NOPD. |4Therefore, as an employee he continues to accrue sick and annual leave, and Item #3 of the Consent Judgment is enforceable.

The City argues that as an employee's years of credible service are calculated and finite on the date of retirement, it is axiomatic that a former classified employee does not continue to accrue sick and annual leave after they retire.

■ We first address Auster's claim as to the revivability of the consent judgment. We hold that the subject judgment is not a money judgment, and is therefore not revivable. In *Jones v. City of New Orleans*, 09–0369 (La.App. 4 Cir. 9/2/09), 20 So.3d 518 (2009), this court held:

> ... [A] workers' compensation judgment awarding disability benefits into the future *"until the disability ceases"* is not a money judgment for a sum certain subject to the revival requirements of La. C.C. art. 3501. A workers' compensation judgment awarding weekly disability benefits is an award of the payment of future sums of money for an indefinite period of time contingent upon the disabled worker remaining disabled and alive.

*Id.,* 09–0369, pp. 4–5, 20 so.3d at 522. As such, Auster's argument relative to the revival of the judgment is irrelevant.

What is relevant to the resolution of this case is whether Auster continued to accrue sick and annual leave after the date of his retirement, and, if so, has his right to seek compensation prescribed.

■ Sick and annual leave accrues while an employee is actively employed. Auster retired in July 1995 and applied for disability retirement benefits, which were approved in October 1995. Until Auster was terminated in July 1995, |5although he was not actively working for the NOPD, he remained classified as an active employee, thereby entitled to accrue sick and annual leave. The workers' compensation benefits he received up to that point were based upon his claim that he was unable to return to work at that time.

■ However, Auster's application for disability retirement signified that he was never going to return to work. He was, however, still entitled to receive workers' compensation benefits for his disability incurred on the job. The amount of the disability retirement payments was offset by the amount of the workers' compensation benefits, all of which was fully explained to Auster in a letter from MPERS dated December 29, 1995. Continued receipt of workers' compensation benefits did not signify that Auster was still an active employee entitled to continued accrual of sick and annual leave.

Auster's interpretation of the Consent Judgment is misguided. The judgment states that Auster would continue to accrue sick and annual leave days and will accrue credit for time in service to the City as pertaining to his pension rights. Once Auster was terminated by the City and exercised his right to claim his disability retirement benefits, he was no longer ac-

cruing credit for time in service or credit for sick and annual leave. Accordingly, Auster continued to accrue sick and annual leave from January 30, 1989 (the date the consent judgment was signed) to October 12, 1995 (his date of retirement). The Consent Judgment does not provide for continued accrual of sick and annual leave past the date of retirement.

Having found that Auster accrued sick and annual leave from January 30, 1989 to October 12, 1995, we must determine if his right to claim those benefits has prescribed.

Louisiana Civil Code art. 3494 sets forth the actions or claims that are subject to liberative prescription of three years, specifically, "[a]n action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees, fees and emoluments of public officials, freight, passage, money, lodging and board. La. Civ. Code art. 3494(1).

As Auster's entitlement to his accrued sick and annual leave became exigible on October 12, 1995, he had three years from that date to claim those benefits. The Motion to Enforce Judgment was not filed until May 20, 2015. The motion is prescribed on its face.

Accordingly, for the reasons set forth above, we affirm the judgment of the trial court.

**AFFIRMED**

## LEDET, J., CONCURS WITH REASONS

1. La. C.C. art. 3494 provides as follows:

The following actions are subject to a liberative prescription of three years:

## LEDET, J., CONCURS WITH REASONS

Although I agree with the result the majority reaches, I write separately to further articulate my reasoning.

The former employee, John Auster, filed a Motion to Enforce the following two portions of the January 30, 1989 Consent Judgment:

- The City of New Orleans will return to John Auster all sick and annual leave days used by John Auster from April 29, 1987 through the date of this judgment.

- John Auster will continue to accrue sick and annual leave days and will accrue credit for time in service to the City of New Orleans as pertaining to his pension rights as provided by law. This accrual of days shall occur concurrent with receipt of worker's compensation indemnity benefits by John Auster.

As the majority points out, at the September 11, 2015 hearing on the motion to enforce, Mr. Auster conceded that in March 1989 he was paid for the accrued sick and annual leave days from August 28, 1987 to January 30, 1989, the date of the consent judgment. Hence, only the second part of the Consent Judgment is at issue on appeal.

As to the second part, it is necessary to split the analysis of the issue presented into two periods—the period between the date of the Consent Judgment and the date of retirement (the pre-retirement period); and the period between the date of retirement and the filing of the Motion to Enforce (the post-retirement period). As to the pre-retirement period, the City's position is that the three-year prescription period in La. C.C. art. 3494[1] applies to Mr.

(1) An action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees, fees and

Auster's claim for insufficient payment of accrued leave. Thus, the City contends any claim for accrued leave that became eligible when Mr. Auster retired in 1995 was prescribed when the Motion to Enforce was filed in 2015.

The majority finds that the claim for accrued sick and annual leave time for the pre-retirement period prescribed. The majority reasons that Mr. Auster's entitlement to his accrued sick and annual leave time became exigible when he retired in 1995 and that he had three years to file a claim for these benefits. Thus, the majority finds the motion to enforce judgment, filed in 2015, seeking these benefits was prescribed on its face. I agree.

As to the post-retirement period, the majority finds that the Consent Judgment does not provide for the continued accrual of sick and annual leave past the date of retirement. I agree. As the majority notes, "[s]ick and annual leave accrues while an employee is actively employed." The City established that Mr. Auster was no longer employed as of the date of his retirement.

For the above reasons, I respectfully concur.